UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ASIAN MARINE SALVAGE LTD.,

                     Plaintiff,

    - against -

NORTHERN SHIPPING JOINT STOCK COMPANY,

                  Defendant.

------------------------------------------------------------X

09 CV _____

ECF CASE

RECEIVED
SEP 30 2009
U.S.D.C. S.D.N.Y.
CASHIERS

## VERIFIED COMPLAINT

Plaintiff, ASIAN MARINE SALVAGE LTD. (hereinafter "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, NORTHERN SHIPPING JOINT STICK COMPANY(hereinafter "Northern Shipping" or "Defendant") alleges upon information and belief as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333.

2.      At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and operating under the laws of St. Vincent and The Grenadines, with a principal place of business located at 24F-1, No. 29 Hai Bian Road, Kaohsiung, Taiwan, Rep of China.

3.      Upon information and belief, Northern Shipping was, and still is, a foreign corporation, or other business entity, having its office at NO.278 Ton Duc Thang Str, Dong Da District, Ha Noi City, Vietnam.

4.      At all material times, Plaintiff was the operator of the salvage tug "SALVAGE DUKE".

5.     Upon information and belief, Defendant Northern Shipping was, at all times material hereto, the owner of the motor tanker "LONG BIEN".

6.     On or about 0852 hrs August 3, 2009 local time, Defendant, through its agent, non-party Sunscot and Company (hereinafter "Sunscot"), approached Plaintiff, operator of the salvage tug " SALVAGE DUKE"  , for a quote for service of towage to tow the LONG BIEN from where she was to either Subic Bay in Philippine or the port of Hai Phong in Vietnam. *See email from Defendant to Plaintiff dated August 3, 2009 attached hereto as Exhibit "1."*

7.     Upon information and belief, LONG BIEN had main engine problems and was drifting at the position of 17-43N 116-25E.

8.     Upon information and belief, the LONG BIEN contained 6,350 metric tons of fertilizer on board in her cargo holds.

9.     In response to Defendant's request, Plaintiff offered "SALVAGE DUKE" of 7,00BHP and 95 tons bollard pull which had just departed from Hong Kong and was on her way to Kaohsiung, Taiwan, and gave an estimated time of arrival at the LONG BIEN in "approximate 24-28 hrs".

10.     Defendant accepted Plaintiff's offer and agreed to use the "SALVAGE DUKE."

11.     Plaintiff instructed "SALVAGE DUKE" at 2015 hrs of the same day to deviate from her original course to Kaohsiung and proceed toward the ship "Long Bien". *See Plaintiff's emails to Defendant and Defendant's emails to Plaintiff dated 0949 hrs August 4, 2009 annexed hereto as Exhibit "2."*

12.     Plaintiff and Defendant agreed to the following terms:

Towage of " Long Bien"  /Loaded with bulk fertilizer.
   From approximate lat 17-43N Long 116-25E to Da Nan.
   M.V. "Salvage Duke" 7,200 BHP 95 t bp.

Daily Hire RateUSD20,000.-/PDPR, including fuel, lubes & water whilst under tow.
Delivery/Redelivery: Up on tug's arrival at casualty location / Da Nang
Mob / Demob: USD25,000.- / US$55,000.-/both lump sum
Contract : Towhire
Minimum hire /cancellation: 5 days hire
Payment : every 5 days in advance
Offer subject to Tug availability / terms & conditions.

*See email dated 0856 hrs August 4, 2009 from Defendant to Plaintiff annexed hereto as Exhibit "3."*

13.    Plaintiff sent a written contract memorializing the parties' agreement in format of "Towhire" agreement to Defendant. *See Plaintiff's' e-mail to Defendant dated 0909 hrs August 4, 2009, annexed hereto as Exhibit "4."*

14.    Subsequently, Defendant advised Plaintiff at 1827 hrs August 4, 2009 that the ship's main engine has been fixed by her crew, and tug assistance was no more required. *See Defendants' email to Plaintiff annexed hereto as Exhibit "5."*

15.    Plaintiff immediately notified the "SALVAGE DUKE" that her assistance was no longer required, who returned the same day to Kaohsiung.

16.    Plaintiff performed all of its obligations to Defendant pursuant to the agreement between Plaintiff and Defendant.

17.    As a result of Defendant's breach of its agreement with Plaintiff, Plaintiff has suffered damages in the amount of $225,000.00, which damages were foreseeable by Defendant at the time Defendant entered into the agreement with Plaintiff.

18.    Due to and as a result of Defendant's breach of the Towhire agreement, Plaintiff has sustained damages in the principal amount of $225,000.00, exclusive of interest, arbitration costs and attorneys' fees. *See breakdown of amounts due annexed hereto as Exhibit "6."*

19.     Pursuant to the Towhire agreement, disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

20.     Plaintiff intends to commence London arbitration proceedings against Defendant.

21.     Interest, costs and attorneys fees are routinely awarded to the prevailing party in such proceedings.  As best as can now be estimated, Plaintiff expects to recover the following amounts as the prevailing party in the substantive proceedings:

| | | |
|---|---|---|
| A. | Principal claim: | $ 225,000.00 |
| B. | Interest on claim: 2 years at 3% per annum | $13,500.00 |
| C. | Estimated recoverable attorney's fees and costs: | $75,000.00 |
| **Total** | | **$313,500.00** |

22.     The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant. *See Affidavit in Support of Maritime Attachment annexed hereto as Exhibit "7."*

23.     The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the Defendants held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE,** Plaintiff prays:

A.     That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.     That pursuant to 9 U.S.C. §§ 201. *et seq.* and/or the doctrine of comity this Court recognize and confirm any foreign judgment or arbitration award rendered on the claims had herein as a Judgment of this Court;

C.     That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendant, in the amount of **$313,500.00** calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.     That this Court enter judgment against Defendant on the claims set forth herein;

E.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F.     That this Court award Plaintiff its attorney's fees and costs of this action; and

G.     That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: September 30, 2009

The Plaintiff,
ASIAN MARINE SALVAGE LTD.

By: _____
Nancy R. Siegel
Coleen A. McEvoy
Charles E. Murphy
LENNON, MURPHY & LENNON, LLC
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
nrs@lenmur.com
cam@lenmur.com
cem@lenmur.com

## ATTORNEY'S VERIFICATION

1.    My name is Nancy R. Siegel.

2.    I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.    I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4.    I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.    The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.    The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated:        September 30, 2009

Nancy R. Siegel

# EXHIBIT 1

**Exhibit**

**From:** "Sunscot" <Sunscot@sunscot.com>
**Date:** 3 August 2009 09:30:12 GMT+08:00
**To:** "Asian Marine - Steve J. Hulme " <asus487@seed.net.tw>, "Asian Marine Kaohsiung " <asus487@so-net.net.tw>
**Subject: LONG BIEN IN POSITION  17-43 NORTH AND 116 25 EAST**


TO : ASIA MARINE

FM : SUNSCOT HONG KONG

GOOD MORNING STEVE,

REF : LONG BIEN   ENGINE PROBLEM 17-43 NORTH   116-25 EAST

WE ARE SUNSCOT AND COMPANY BASED IN HONG KONG SINCE 1983 AND OUR CONTACT
DETAILS ARE AS FOLLOWS :-

SUNSCOT AND COMPANY

ROOM 1505 JUBILEE CENTRE

46, LOCKHART ROAD

WANCHAI

HONG KONG

PHONE (852) 2865-1889

FAX     (852) 2861-0298

E-MAIL   " SUNSCOT@SUNSCOT.COM "

WEEB SITE " WWW.SUNSCOT.COM "

OUR PRINCIPALS VESSEL " LONG BIEN " HAS SUFFERED A MAIN ENGINE FAILURE IN POSITION 17-43 NORTH AND 116-25 EAST AND HER DETAILS ARE AS FOLLOWS :-

LONG BIEN     (EX - ESPERANZA ACE)

DWT: 6,846 MT, ON 7.493 M DRAFT

BUILT: 11/1989   IWAGI ZOSEN K.K. -IWAG JAPAN

VIETNAM FLAG   TWEEN DECK CARGO VESSEL

CLASS:  VIETNAM REGISTER

LOA: 97.13M, LBP: 89.95M, BREADTH: 18.00M
HOLDS: 2 / HATCHES: 2

THE LONG BIEN LOADED 6,350 MTS BULK FERTLISER   FROM KAOHSIUNG FOR DISCHARGE IN
PORT KELANG.

AS ADVISED SHE HAS SUFFERED A MAIN ENGINE FAILURE IN POSITION 17-43N, 116-25E.

**CAN YOU PLEASE QUOTE TO TOW HER TO SUBIC BAY OR HAIPHONG**

**HER LOADED DRAFT IS ABOUT 7.5 METERS.**

Kind regards
Keith Martin
Sunscot and Company Limited
Phone   (852)  2865-1889
Fax      (852)  2861-0298
Mobile  (852)  9467-0364
e-mail   sunscot@sunscot.com
HTTP    www.sunscot.com

# EXHIBIT 2

## Exhibit _

**From:** "S_DUKE" <S_duke@SkyFile.com>
**Date:** 4 August 2009 09:49:14 GMT+08:00
**To:** sunscot@sunscot.com
**Cc:** amc@asian-marine.com.tw
**Subject:** " Mv Long Bien"


04 July 2009


To: Ric Sunscot/Kieth

From: Salvage Duke

Subject: "Mv Long bien"

============

(1.) 2015hrs.lt. yesterday altered course towards "Mv Long Bien"

position. after received a telecon advise from Mr.

K.T.Lu. Course was set to 115t to passed N n E of

Pratas due to TD in lat-19.4n long-115.8e moving N.

(2.) 0730hrs.lt. today course was altered to 214 to pass E of Pratas

TS GONI in lat-20.3n long-114.2e moving NW.

(3.) 0900hrs.lt. Received new position of "Mv Long Bien" lat-18.02n

long-118.00e, course reroute towards Casualty n set

course to 150t. Eta 0700hrs.lt. tomorrow 05 July 2009.

at present speed of 9.0kts.

(4.) WX- Wind- Se- Force- 30kts. Sea- rough. Please advise particulars

of Mv Long Bien n contact details.

B/Rgds

Capt. Rea

**Exhibit**

**From:** "Sunscot" <Sunscot@sunscot.com>
**Date:** 3 August 2009 17:49:55 GMT+08:00
**To:** "Asian Marine - Steve J. Hulme " <asus487@seed.net.tw>
**Subject: MV LONG BIEN - TOW TO DANANG**

To : Northern Shipping
Fm : Sunscot Hong Kong

Steve / Keith

# REF : LONG BIEN – SALVAGE DUKE

The Owners have agreed to use the "SALVAGE DUKE " and have authorised
us to counter as follows :-

- Towage of "Long Bien" / Loaded with Bulk fertilizer

- From Approx Lat 17-43N Long 116-25E to Da Nang

- M.V. "Salvage Duke"  7200 Bhp  95t Bp

- Daily Hire Rate USD 20,000-00/- PDPR, Including Fuel, Lubes & Water whilst under tow

- Delivery / Redelivery      Up on Tug's arrival at Casualty Location  /  Da Nang

- Mob / Demob    USD 25,000   /  USD  50,000/ both lump sum

- Contract  Towhire

- Minimum hire / Cancellation   5 Days Hire

- Payment Every 5 Days in advance

- Offer Subject To Tug Availability / Terms & Conditions

- Counter valid for reply by 2000 HK time today.

The Address of Northern Shipping, owners of the Long Bien is as follows :-

Northern Shipping Company,
278, Ton Duc Thang,
Dong Da District,
Hanoi,
Vietnam

After redelivery of the tug we would be looking at debiting ASIAN MARINE with
a USD 5,000 debit note for commission – is this OK with you.

Kind regards
Keith Martin
Sunscot and Company Limited
Phone  (852)  2865-1889
Fax       (852)  2861-0298
Mobile (852)  9467-0364
e-mail   sunscot@sunscot.com
HTTP     www.sunscot.com

### Exhibit 3

**From:** "S.J.Hulme" <amc@asian-marine.com.tw>
**Date:** 3 August 2009 11:16:45 GMT+08:00
**To:** Sunscot <Sunscot@sunscot.com>
**Cc:** Marine Asian <amc@asian-marine.com.tw>
**Subject:** Fwd: LONG BIEN IN POSITION   17-43 NORTH AND 116 25 EAST

Hi Kieth,

Approximately 24 - 28 Hrs, subject to weather. Salvage Duke
has just, in the last hour departed Hong Kong opl at Economical
speed for Kaohsiung but is still prompt available to divert at any time,
subject to availability / terms & conditions.

Regards,

Steve

Begin forwarded message:

# EXHIBIT 3

**Exhibit**

**From:** "Sunscot" <Sunscot@sunscot.com>
**Date:** 4 August 2009 08:56:26 GMT+08:00
**To:** "Asian Marine - Steve J. Hulme " <asus487@seed.net.tw>
**Subject: MV LONG BIEN - TOW TO DANANG**

Steve / Keith

# REF : LONG BIEN – SALVAGE DUKE

Last night I advised Northern Shipping that the minimum that the Owners of the
 "SALVAGE DUKE " will agree is as follows :-

- Towage of "Long Bien" / Loaded with Bulk fertilizer

- From Approx Lat 17-43N Long 116-25E to Da Nang

- M.V. "Salvage Duke"  7200 Bhp   95t Bp

- Daily Hire Rate USD 20,000-00/- PDPR, Including Fuel, Lubes & Water whilst under tow

- Delivery / Redelivery      Up on Tug's arrival at Casualty Location  /  Da Nang

- Mob / Demob      USD 25,000   /   USD  55,000/ both lump sum

- Contract   Towhire

- Minimum hire / Cancellation   5 Days Hire

- Payment Every 5 Days in advance

- Offer Subject To Tug Availability / Terms & Conditions

Verbally they said OK and I am awaiting their written confirmation as they have
notified their Insurance of everything.

I will revert very shortly with the full contact details of the Long Bien.

Kind regards
Keith Martin
Sunscot and Company Limited
Phone    (852)  2865-1889
Fax        (852)  2861-0298
Mobile   (852)  9467-0364
e-mail    sunscot@sunscot.com
HTTP      www.sunscot.com

# EXHIBIT 4

## Exhibit

**From:** "S.J.Hulme" <amc@asian-marine.com.tw>
**Date:** 4 August 2009 09:09:18 GMT+08:00
**To:** Sunscot <Sunscot@sunscot.com>
**Cc:** Marine Asian <amc@asian-marine.com.tw>, "Lu K.T. Lu" <ktluamc@hotmail.com>
**Subject: Fwd: MV LONG BIEN - TOW TO DANANG**

Dear Kieth,

As per Mr Lu's telephone counter offer with you, of yesterday evening.
Enclosed is a draft copy of the contract with the agreed Mob /demob
& Commission Payments.

- Mob / demob      USD  25,000  /  USD  55,000 /  Both Lump Sum
- Confirm commission to Sunscot as USD  4,000/-  Lump Sum payment only

Please advise if any comments to the draft contract & then I can make up
the originals.

Best Regards,

Steve J. Hulme

Operations Manager

Asian Marine Co. Ltd.,

24-1, no 29 Hai Bian Road,

Kaohsiung, Taiwan

Post Code: 80248

Office Tel:   +886-7-2692700

Office Fax:-  +886-7-2692702

Mob:-     +886-936-252199

E-Mail:-

asianmarine@asian-marine.com.tw

amc@asian-marine.com.tw

Website:  www.asian-marine.com.tw

Recommended by
International Salvage Union (ISU)
European Tugowners Association (EETA)
The Baltic and International Maritime Council (BIMCO)

| 1. Date and place of Agreement<br>3ʳᵈ. August, 2009 / Kaohsiung | RECOMMENDED<br>INTERNATIONAL OCEAN TOWAGE AGREEMENT (DAILY HIRE)<br>CODE NAME: "TOWHIRE"                     PART I |
|---|---|
| 2. Tugowner/place of business<br>Asian Marine Co. Ltd.,<br>24F-1, Nos 29 Hai Bian Road,<br>Kaohsiung, Taiwan<br>Off Tel : +886 7 269 2700<br>Off Fax: +886 7 269 2702<br>E Mail: amc@asian-marine.com.tw | 3. Hirer/place of business<br>Northern Shipping Joint Stock Company (NOSCO),<br>No 278 Ton Duc Thang Str.,<br>Dong Da Distr,<br>Ha Noi City, Vietnam<br>Off Tel: +84 4 3851 4377<br>Off Fax: +84 4 3511 3347<br>E Mail: nosco@fpt.vn |
| 4. Tow (name and type)<br>MV Long Bien / Tween Deck Cargo Vessel | 5. Gross tonnage/displacement tonnage<br>Dwt 6846 M/t |
| 6. Maximum length/maximum breadth & towing draught (fore and aft)<br>L 97.13m x B 18m x Draft 7.493m | 7. Flag and place of registry<br>Vietnam |
| 8. Registered owners<br>See Box 3 | 9. Classification society<br>VR |
| 10. P. & I. liability insurers | 11. General condition of tow<br>Seaworthy with M/Engine Breakdown |
| 12. Particulars of cargo and/or ballast and/or other property on board the tow<br>Loaded with 6,350 Mts Bulk Fertiliser | |
| 13. Tug (name and type)<br>MV "Salvage Duke" / Ocean - Going Tug | 14. Flag and place of registry<br>St Vincent & The Grenadines / Kingstown |
| 15. Gross tonnage<br>Grt 1059t | 16. Classification Society<br>RMS |
| 17. P. & I. liability insurers<br>Shipowner's Mutual Protection & Indemnity Association, Luxembourg | |
| 18. Certificated bollard pull (if any)<br>95t BP | 19. Indicated horse power<br>7200 BHP |
| 20. Estimated daily average bunker oil consumption in good weather and smooth water<br>(a) at full towing power with tow<br>N/A<br>(b) at full sea speed without tow<br>N/A | |
| 21. Winches and main towing gear<br>Equipped with Double drum Towing Winch fitted with 2 x 58mm Diameter x 1100 Mtr Tow Wires | |

(continued)

Printed by BIMCO's Idea

Copyright, published by
The Baltic and International Maritime Council (BIMCO)

This document is a computer generated TOWHIRE form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

WORKING COPY

(continued)          "TOWHIRE" INTERNATIONAL OCEAN TOWAGE AGREEMENT (DAILY HIRE)          PART I

| 22. Nature of service(s) (Cl. 1) **Towage Only** | | |
|---|---|---|
| 23. Place of departure (Cl. 7) **Upon Arrival Approx Position of Casualty Lat 17-43N Long 116-25E** | 24. Date of departure **4th-5th August, 2009** | 25. Place of destination (Cl. 8) **Da Nang, Vietnam** |

| 26. Contemplated route (Cl. 17) |
|---|
| **Most Direct & always at the Tug Master's discretion, with regard to safety, in consultation with the Master of the Tow** |

| 27. Notices (state number of hours/days notice of arrival of tug at place of departure and to whom to be given) **N/A** | 28. Notices (state number of hours/days notice of arrival of tug and tow at place of destination and to whom to be given) **N/A** |
|---|---|
| 29. Riding crew to be provided by (also state number to be provided) (Cl. 9) **N/A** | 30. If riding crew provided by Tugowner state amount per man per day payable by Hirer (Cl. 9) **N/A** |
| 31. Mobilisation payment (optional, only to be filled in if expressly agreed) (Cl. 2(e)) **USD 25,000/-** | 32. Demobilisation payment (optional, only to be filled in if expressly agreed) (Cl. 2(f)) **USD 55,000/-** |
| 33. Daily rate of hire and advance payment period(s) (Cl. 2(a)) **Daily Hire Rate USD 20,000/- PDPR Including Fuel, Lubes & Water, Every 5 Days In Advance** | 34. Payment of hire and for riding crew (if any) (state currency, mode of payment, place of payment and bank account) (Cl. 2(b)) **By Telegraphic Transfer In United States Dollars Only, without deduction, up on receipt of Tug Owner's Faxed / Electronic Invoice & to the Bank Account Details Stated Therein.** |
| 35. Minimum period of hire, if any agreed **5 Days Hire  USD  100,000/-** | 36. Commencement of period of hire (Cl. 2(a)) **Up On Tug'Arrival at the Place of the drifting casualty.** |
| 37. Termination of period of hire (Cl. 2(a)) **Da Nang / Pilot Away on tug's release** | 38. Cancelling date, if any agreed (Cl. 16(e)) **N/A** |
| 39. Interest rate (%) per annum to run from (state number of days) after any sum is due (Cl. 5) **3% Per Annum / 5 Banking Days** | 40. Security (state sum, by whom to be provided and when) (optional, only to be filled in if expressly agreed) (Cl. 6) **N/A** |
| 41. Cost of bunker oil and lubricating oils (state whether included or excluded from daily rate of hire; if included state type of bunkers and cost per metric tonne (per litre for lubricating oils) (Cl. 2(d)) **Included in Daily Hire Rate** | |
| 42. Cancellation fee (Cl. 16) **As Per Box 35 / 5 Days Hire = USD 100,000/-** | 43. Numbers of additional clauses, covering special provisions, if agreed **Nil** |

WORKING COPY

This document is a computer generated TOWHIRE form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

(continued)         "TOWHIRE" INTERNATIONAL OCEAN TOWAGE AGREEMENT (DAILY HIRE)                    PART I

It is mutually agreed between the party mentioned in Box 2 (hereinafter called "the Tugowner") and the party mentioned in Box 3 (hereinafter called "the Hirer") that the Tugowner shall, subject to the terms and conditions of this Agreement which consists of PART I including additional clauses, if any agreed and stated in Box 43, and PART II, use his best endeavours to perform the towage or other service(s) as set out herein. In the event of a conflict of terms and conditions, the provisions of PART I and any additional clauses, if agreed, shall prevail over those of PART II to the extent of such conflict but no further.

| Signature (Tugowner)        | Signature (Hirer)                      |
|-----------------------------|----------------------------------------|
| **Asian Marine Co. Ltd.**   | **Northern Shipping Joint Stock Company** |

# WORKING COPY

# WORKING COPY

This document is a computer generated TOWHIRE form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

PART II
"Towhire" International Ocean Towage Agreement (Daily Hire)

**1. The Tow**
"The Tow" shall include any vessel, craft or object of whatsoever nature in- 1
cluding anything carried thereon as described in PART I to which the Tug- 2
owner agrees to render the service(s) as set out in Box 22. 3
4

**2. Price and Conditions of Payment**
(a) The Hirer shall pay the Tugowner the amount of hire set out in Box 33 per 5
day or pro rata for part of a day (hereinafter called the "Tug's Daily Rate of 6
Hire") from the time stated in Box 36 until the time stated in Box 37. 7
8
(b) (i) The Tug's Daily Rate of Hire shall be payable in advance as set out in 9
Box 33; all hire or equivalent compensation hereunder shall be fully and 10
irrevocably earned and non-returnable on a daily basis. 11
(ii) In the event of the Tug being lost, hire shall cease as of the date of the 12
loss. If the date of the loss cannot be ascertained, then, in addition to 13
any other sums which may be due, half the rate of hire shall be paid, 14
calculated from the date the Tug was last reported until the calculated 15
arrival of the Tug at her destination provided such period does not ex- 16
ceed 14 days. 17
(iii) In the event of the Tow being lost, hire shall continue until the Tug ar- 18
rives at its destination or such nearer place, at the Tugowner's discre- 19
tion, provided such period does not exceed 14 days. 20
(c) Within 14 days of the termination of the services hereunder by the Tug- 21
owner, the Tugowner will necessarily adjust in conformance with the terms 22
of this Agreement the hire paid in advance. Any hire paid by the Hirer but not 23
earned under this Agreement and which has probably thereunder shall be 24
refunded to the Hirer within 14 days thereafter. 25
(d) (i) In the event that the Daily Rate of Hire includes the cost of bunkers 26
and the average price per metric tonne of bunkers actually paid by the 27
Tugowner differs from the amounts specified in Box 41 then the Hirer or 28
the Tugowner, as the case may be, shall pay to the other the difference 29
per metric tonne for every metric tonne consumed during the voyage. 30
The average price specified above shall be the average of the prices 31
per metric tonne actually paid by the Tugowner on the basis of quanti- 32
ties purchased at the last bunkering port prior to departure on the voy- 33
age, any bunkering port during the voyage, and the first bunkering port 34
after completion of the voyage. The log book of the Tug shall be prima 35
facie evidence of the quantity of bunkers consumed. 36
(ii) In the event that the Daily Rate of Hire excludes the cost of bunkers 37
then the Hirer shall pay to the Tugowner the cost of the bunkers and lu- 38
bricants consumed by the Tug in fulfilling the terms of this Agreement. 39
The Tug shall be delivered with sufficient bunkers and lubricants on 40
board for the tow to the first bunkering port (if any) or destination and be 41
re-delivered with not less than sufficient bunkers to reach the next bun- 42
kering stage en route to the Tug's next port of call. The Hirer upon de- 43
livery and the Tugowner upon re-delivery shall pay for the bunkers and 44
lubricants on board at the current contract price at the time at the port 45
of delivery and re-delivery or at the nearest bunkering port. 46
*) (e) If agreed, the Hirer shall pay the sum set out in Box 31 by way of a mobili- 47
sation charge. This sum shall be paid on or before the commencement of 48
the Tug's voyage to the place of departure, and shall be non-returnable, Tug 49
and/or Tow lost or not lost. 50
*) (f) If agreed, the Hirer shall pay the sum set out in Box 32 by way of a demo- 51
bilisation charge. This amount shall be paid tow lost or not lost, on or before 52
the termination by the Tugowner of his services under this Agreement. 53
(g) The Hire and any other sums payable to the Tugowner under this Agree- 54
ment (or any part thereof) shall be due, payable and paid without any dis- 55
count, deduction, set-off, lien, claim or counterclaim. 56
*) Sub-clauses (e) and (f) are optional and shall only apply if agreed and sta- 57
ted in Boxes 31 and 32, respectively. 58

**3. Additional Charges and Extra Costs**
(a) The Hirer shall appoint its agents at the place of departure and place of 59
destination and ports of call or refuge and shall provide such agents with 60
adequate funds as required. 61
(b) The Hirer shall bear and pay as and when they fall due:- 62
(i) All port expenses, pilotage charges, harbour and canal dues and all 63
other expenses of a similar nature levied upon or payable in respect of 64
both the Tug and the Tow. 65
(ii) All taxes, (other than those normally payable by the Tugowner in the 66
country where he has his principal place of business and in the country 67
where the Tug is registered) stamp duties or other levies payable in re- 68
spect of or in connection with this Agreement or the payments of hire or 69
other sums payable under this Agreement or the services to be per- 70
formed under or in pursuance of this Agreement, any Customs or Exci- 71
se duties and any costs, dues or expenses payable in respect of any 72
necessary permits or licences. 73
(iii) The cost of the services of any assisting tugs when deemed neces- 74
sary by the Tugmaster or provided by Port or other Authorities. 75
(iv) All costs and expenses necessary for the preparation of the Tow for 76
77

towing (including such costs or expenses as those of raising the anchor 78
of the Tow or tending or casting off any moorings of the Tow). 79
(v) The cost of insurance of the Tow shall be the sole responsibility of 80
the Hirer to provide. 81
(c) All taxes, charges, costs, and expenses payable by the Hirer shall be 82
paid by the Hirer direct to those entitled to them. If, however, any such tax, 83
charge, cost or expense is in fact paid by or on behalf of the Tugowner (not- 84
withstanding that the Tugowner shall under no circumstances be under any 85
obligation to make such payments on behalf of the Hirer) the Hirer shall 86
reimburse the Tugowner on the basis of the actual cost to the Tugowner 87
upon presentation of invoice. 88

**4. War Risk Escalation Clause**
The rate of hire is based and assessed on all war risk insurance costs ap- 89
plicable to the Tugowner in respect of the contemplated voyage in effect on 90
the date of this Agreement. 91
In the event of any subsequent increase or decrease in the actual costs due 92
to the Tugowner fulfilling his obligations under this Agreement, the Hirer or 93
the Tugowner, as the case may be, shall reimburse to the other the amount 94
of any increase or decrease in the war risk, confiscation, deprivation or 95
trapping insurance costs. 96
97

**5. Interest**
If any amount due under this Agreement is not paid when due, then inte- 98
rest shall accrue and shall be paid in accordance with the provisions of Box 99
38 on all such amounts until payment is received by the Tugowner. 100
101

**6. Security**
The Hirer undertakes to provide, if required by the Tugowner, security to the 102
satisfaction of the Tugowner in the form and in the sum, at the place and at 103
the time indicated in Box 40 as a guarantee for due performance of the 104
Agreement. Such security shall be maintained to the guarantor when the Hi- 105
rer's financial obligations under this Agreement have been met in full. 106
(Optional, only applicable if Box 40 filled in). 107
108

**7. Place of Departure**
(a) The Tow shall be tendered to the Tugowner at the place of departure 109
stated in Box 23. 110
(b) The precise place of departure shall always be safe and accessible for 111
the Tug to enter, to operate in and for the Tug and Tow to leave and shall be a 112
place where such Tug is permitted to commence the towage in accordance 113
with any local or other rules, requirements or regulations and shall always 114
be subject to the approval of the Tugowner which shall not be unreasonably 115
withheld. 116
117

**8. Place of Destination**
(a) The Tow shall be accepted forthwith and taken over by the Hirer or his 118
duly authorised representative at the place of destination stated in Box 25. 119
(b) The precise place of destination shall always be safe and accessible 120
for the Tug and Tow to enter, to operate in, and for the Tug to leave and shall 121
be a place where such Tug is permitted to redeliver the Tow in accordance 122
with any local or other rules, requirements or regulations and shall always 123
be subject to the approval of the Tugowner, which approval shall not be un- 124
reasonably withheld. 125
126

**9. Riding Crew**
(a) In the event that the Tugowner provides a Riding Crew for the Tow, such 127
crew and their suitability for the work shall be in the discretion of the Tug- 128
owner. All expenses for such personnel shall be for the account of the Tug- 129
owner. 130
(b) In the event that any personnel are placed on board the Tow by the Hirer 131
all expenses for such personnel whether for the account of the Hirer and such 132
personnel shall be at all times under the orders of the Master of the Tug, but 133
shall not be deemed to be the servants or agents of the Tugowner. 134
(c) The Riding Crew shall be provided at the Hirer's sole expense with sui- 135
table accommodation, food, fresh water, life saving appliances and all other 136
requirements to comply as necessary with the law and regulations of the 137
law of the Flag of the Tug and/or Tow and of the States through the territorial 138
waters of which the Tug will pass or enter. It is a requirement that members 139
of the Riding Crew provided by the Hirer shall be able to speak and under- 140
stand the English language or any other mutual language. 141
142

**10. Towing Gear and Use of Tow's Gear**
(a) The Tugowner agrees to provide free of cost to the Hirer all towing haw- 143
sers, bridles and other towing gear normally carried on board the Tug, for 144
the purpose of the towage or other services to be provided under this Agree- 145
ment. The Tow shall be connected up in a manner within the discretion of 146
the Tugowner. 147
(b) The Tugowner may make reasonable use at his discretion of the Tow's 148
gear, power, anchors, anchor cables, radio, communication and naviga- 149
150

This document is a computer generated TOWHIRE form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

**PART II**
## "Towhire" International Ocean Towage Agreement (Daily Hire)

tional equipment and all other appurtenances free of cost during and for the purposes of the towage or other services to be provided under this Agreement. [151–153]

**11. Permits and Certification** [154]
(a) The Hirer shall arrange at his own cost and provide to the Tugowner all necessary licenses, authorisations and permits required by the Tug and Tow to undertake and complete the contractual voyage together with all necessary certification for the Tow to enter or leave all or any ports of call or refuge on the contemplated voyage. [155–159]
(b) Any loss or expense incurred by the Tugowner by reason of the Hirer's failure to comply with this Clause shall be reimbursed by the Hirer to the Tugowner and during any delay caused thereby the Tug shall remain on hire. [160–163]

**12. Tow-worthiness of the Tow** [164]
(a) The Hirer shall exercise due diligence to ensure that the Tow shall, at the commencement of the towage, be in all respects fit to be towed from the place of departure to the place of destination. [165–167]
(b) The Hirer undertakes that the Tow will be suitably trimmed and prepared and ready to be towed at the time when the Tug arrives at the place of departure and fitted and equipped with such shapes, signals, navigational and other lights of a type required for the towage. [168–171]
(c) The Hirer shall supply to the Tugowner or the Tugmaster on the arrival of the Tug at the place of departure an unconditional certificate of towworthiness for the Tow issued by a recognised firm of Marine Surveyors or Survey Organisation, provided always that the Tugowner shall not be under any obligation to perform the towage and in his discretion he is satisfied that the Tow is in all respects trimmed, prepared, fit and ready for towage but the Tugowner shall not unreasonably withhold his approval. [172–178]
(d) No inspection of the Tow by the Tugowner shall constitute approval of the Tow's condition or be deemed a waiver of the foregoing undertakings given by the Hirer. [179–181]

**13. Seaworthiness of the Tug** [182]
The Tugowner will exercise due diligence to tender the Tug at the place of departure in a seaworthy condition and in all respects ready to perform the towage, but the Tugowner gives no other warranties, express or implied. [183–185]

**14. Substitution of Tugs** [186]
The Tugowner shall at all times have the right to substitute any tug or tugs for any other tug or tugs of adequate power (including two or more tugs for one, or one tug for two or more) at any time whether before or after the commencement of the towage or other services and shall be at liberty to employ a tug or tugs belonging to other tugowners for the whole or part of the towage or other service contemplated under this Agreement. Provided however, that the main particulars of the substituted tug or tugs shall be subject to the Hirer's prior approval, but such approval shall not be unreasonably withheld. [187–195]

**15. Salvage** [196]
(a) Should the Tow break away from the Tug during the course of the towage service, the Tug shall render all reasonable services to re-connect the towline and fulfill this Agreement without making any claim for salvage. [197–199]
(b) If at any time the Tugowner or the Tugmaster considers it necessary or advisable to seek or accept salvage services from any vessel or person on behalf of the Tug or Tow, or both, the Hirer hereby undertakes and warrants that the Tugowner or his duly authorised servant or agent including the Tugmaster have the full actual authority of the Hirer to accept such services on behalf of the Tow on any reasonable terms. [200–205]

**16. Cancellation and Withdrawal** [206]
(a) At any time prior to the departure of the Tow from the place of departure the Hirer may cancel this Agreement upon payment of the cancellation fee set out in Box 42. If cancellation takes place whilst the Tug is en route to the place of departure or after the Tug has arrived at or off the place of departure then in addition to the said cancellation fee the Hirer shall pay any additional amounts due under this Agreement. [207–212]
(b) In the event that the towage operation is terminated after departure from the place of departure, but before the Tow arrives at the place of destination without fault on the part of the Tugowner, his servants or agents, the Tugowner shall be entitled to be paid, and if already paid to retain all sums payable according to Boxes 31/34 and any other amounts due under this Agreement. The above amounts are in addition to any damages the Tugowner may be entitled to claim for breach of this Agreement. [213–219]
(c) The Tugowner may without prejudice to any other remedies he may have leave the Tow in a place where the Hirer may take repossession of it and be entitled to payment of cancellation fee or hire, whichever is the greater, and all other payments due under this Agreement, upon any one or more of the following grounds: [220–224]

(i) If there is any delay or delays (other than delay caused by the Tug) at the place of departure exceeding in aggregate 21 running days. [225–226]
(ii) If there is any delay or delays (other than a delay caused by the Tug) at any port or place of call or refuge exceeding in aggregate 21 running days. [227–229]
(iii) If the security as may be required according to Box 40 is not given within 7 running days of the Tugowner's request to provide security. [230–231]
(iv) If the Hirer has not accepted the Tow within 7 running days of arrival at the place of destination. [232–233]
(v) If any amount payable under this Agreement has not been paid within 7 running days of the date such sums are due. [234–235]
(d) Before exercising his option of withdrawing from this Agreement as aforesaid, the Tugowner shall if practicable give the Hirer 48 hours notice (Saturdays, Sundays and public Holidays excluded) of his intention so to withdraw. [236–239]
(e) Should the Tug not be ready to commence the towage at the latest at midnight on the date, if any, indicated in Box 38, the Hirer shall have the option of cancelling this Agreement and shall be entitled to claim damages for detention if due to the wilful default of the Tugowner. Should the Tugowner anticipate that the Tug will not be ready, he shall notify the Hirer thereof by telex, cable or otherwise in writing without delay stating the expected date of the Tug's readiness and ask whether the Hirer will exercise his option to cancel. Such option to cancel must be exercised within 48 hours after the receipt of the Tugowner's notice, otherwise the third day after the date stated in the Tugowner's notice shall be deemed to be the new agreed date to commence the towage in accordance with this Agreement. [240–250]

**17. Necessary Deviation** [251]
(a) If the Tug during the course of the towage or other service under this Agreement puts into a port or place or seeks shelter or is detained or deviates from the original route as set out in Box 26 because either the Tugowner or Tugmaster reasonably consider [252–256]
    (i) that the Tow is not fit to be towed or [256]
    (ii) the Tow is incapable of being towed at the original speed contemplated by the Tugowner or [257–258]
    (iii) the towing connection requires rearrangement, or [259]
    (iv) repairs or alterations to or additional equipment for the Tow are required to safeguard the venture and enable the Tow to be towed to destination, or [260–263]
    (v) it would not be prudent to do otherwise on account of weather conditions actual or forecast, or [264]
because of any other good and valid reason outside the control of the Tugowner or Tugmaster, or because of any delay caused by or at the request of the Hirer, this Agreement shall remain in full force and effect. [265–267]
(b) The Tug shall at all times be at liberty to go to the assistance of any vessel in distress for the purpose of saving life or property or to call at any port or place for bunkers, repairs, supplies, or any other necessaries or to land disabled seamen, but if towing the Tug shall leave the Tow in a safe place and during such period this Agreement shall remain in full force and effect but any period so spent by the Tug in fulfilling or attempting to fulfil the purposes permitted by this sub-paragraph other than for normal replenishment of bunkers or fresh water or supplies shall not entitle the Tugowner to recover from the Hirer the Daily Rate of Hire for the said period. [268–276]
(c) The Tug shall have liberty to comply with any orders or directions as to departure, arrival, routes, ports of call, stoppages, destination, delivery, requisition or otherwise howsoever given by the Government of the Nation under whose flag the Tug or Tow sails or any department thereof, or any person acting or purporting to act with the authority of such Government or any department thereof or by the committee or person having under the terms of the War Risk Insurance on the Tug the right to give such orders or directions and by reason of and in compliance with any such orders or directions anything is done or is not done, the same shall not be deemed a deviation and delivery in accordance with such orders or directions shall be a fulfilment of this Agreement and hire and/or all other sums shall be paid to the Tugowner accordingly. [277–288]
(d) Any deviation howsoever or whatsoever by the Tug or by the Tugowner not expressly permitted by the terms and conditions of this Agreement shall not amount to a repudiation of this Agreement and the Agreement shall remain in full force and effect notwithstanding such deviation, save that no hire shall be paid for the period of such deviation, and shall be without prejudice to any other remedies which the Hirer may have against the Tugowner. [289–294]

**18. Liabilities** [295]
1. (a) The Tugowner will indemnify the Hirer in respect of any liability adjudged due or claim reasonably compromised arising out of injury or death occurring during the towage or other service hereunder to any of the following persons: [296–299]
    (i) the Master and members of the crew of the Tug and any other servant or agent of the Tugowner; [300–301]

This document is a computer generated TOWHIRE form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

PART II
"Towhire" International Ocean Towage Agreement (Daily Hire)

(ii) The members of the Riding Crew provided by the Tugowner or any other person whom the Tugowner provides on board the Tow; 302-303

(iii) Any other person on board the Tug who is not a servant or agent of the Hirer or otherwise on board on behalf of or at the request of the Hirer. 304-306

(b) The Hirer will indemnify the Tugowner in respect of any liability adjudged due or claim reasonably compromised arising from injury or death occurring during the towage or other service hereunder to any of the following persons: 307-310

(i) The Master and members of the crew of the Tow and any other servant or agents of the Hirer; 311-312

(ii) Any other person on board the Tow for whatever purpose except the members of the Riding Crew or any other persons whom the Tugowner provides on board the Tow pursuant to their obligations under this Agreement. 313-316

2. (a) The following shall be for the sole account of the Tugowner without any recourse to the Hirer, his servants, or agents, whether or not the same is due to breach of contract, negligence or any other fault on the part of the Hirer, his servants or agents: 317-321

(i) Loss or damage of whatsoever nature, howsoever caused to or sustained by the Tug or any property on board the Tug. 322-323

(ii) Loss or damage of whatsoever nature caused to or suffered by third parties or their property by reason of contact with the Tug or obstruction created by the presence of the Tug. 324-326

(iii) Loss or damage of whatsoever nature suffered by the Tugowner or by third parties in consequence of the loss or damage referred to in (i) and (ii) above. 327-328

(iv) Any liability in respect of wreck removal or in respect of the expense of moving or lighting or buoying the Tug or in respect of preventing or abating pollution originating from the Tug. 329-331

The Tugowner will indemnify the Hirer in respect of any liability adjudged due to a third party or any claim by a third party reasonably compromised arising out of any such loss or damage. The Tugowner shall not in any circumstances be liable for any loss or damage suffered by the Hirer or caused to or sustained by the Tow in consequence of loss or damage howsoever caused to or sustained by the Tug or any property on board the Tug. 332-337

(b) The following shall be for the sole account of the Hirer without any recourse to the Tugowner, his servants or agents, whether or not the same is due to breach of contract, negligence or any fault on the part of the Tugowner, his servants or agents: 338-341

(i) Loss or damage of whatsoever nature, howsoever caused to or sustained by the Tow. 342-343

(ii) Loss or damage of whatsoever nature caused to or suffered by third parties or their property by reason of contact with the Tow or obstruction created by the presence of the Tow. 344-346

(iii) Loss or damage of whatsoever nature suffered by the Hirer or by third parties in consequence of the loss or damage referred to in (i) and (ii) above. 347-349

(iv) Any liability in respect of wreck removal or in respect of the expense of moving or lighting or buoying the Tow or in respect of preventing or abating pollution originating from the Tow. 350-352

The Hirer will indemnify the Tugowner in respect of any liability adjudged due to a third party or any claim by a third party reasonably compromised arising out of any such loss or damage but the Hirer shall not in any circumstances be liable for any loss or damage suffered by the Tugowner or caused to or sustained by the Tug in consequence of loss or damage, howsoever caused to or sustained by the Tow. 353-358

3. Save for the provisions of Clauses 11, 12, 13 and 16 neither the Tugowner nor the Hirer shall be liable to the other party for loss of profit, loss of use, loss of production or any other indirect or consequential damage for any reason whatsoever. 359-362

4. Notwithstanding any provision of this Agreement to the contrary, the Tugowner shall have the benefit of all limitations of, and exemptions from, liability accorded to the Owners or Chartered Owners of Vessels by any applicable statute or rule of law for the time being in force and the same benefits are to apply regardless of the form of signatures given to this Agreement. 363-367

19. Himalaya Clause
All exceptions, exemptions, defences, immunities, limitations of liability, indemnities, privileges and conditions granted or provided by this Agreement or by any applicable statute rule or regulation for the benefit of the Tugowner or Hirer shall also apply to and be for the benefit of demise charterers, sub-contractors, operators, master, officers and crew of the Tug or Tow and to and be for the benefit of all bodies corporate parent of, subsidiary to, affiliated with or under the same management as either of them, as well as all directors, officers, servants and agents of the same and to and be for the benefit of all parties performing services within the scope of this Agreement for or on behalf of the Tug or Tugowner or Hirer as servants, agents and 368-378

sub-contractors of such parties. The Tugowner or Hirer shall be deemed to be acting as agent or trustee of and for the benefit of all such persons, entities and vessels set forth above but only for the limited purpose of contracting for the extension of such benefits to such persons, bodies and vessels. 379-382

20. War and Other Difficulties
(a) If owing to any Hostilities; War or Civil War; Acts of Terrorism; Acts of Public Enemies; Arrest or Restraint of Princes, Rulers or People; Insurrections; Riots or Civil Commotions; Disturbances; Acts of God; Epidemics; Quarantine; Ice; Labour Troubles; Labour Obstructions; Strikes; Lock-outs; Embargoes; Seizure of the Tow under Legal Process or for any other cause outside the control of the Tugowner it would be impossible or unsafe or commercially impracticable for the Tug or Tow or both to leave or attempt to leave the place of departure or any port or place of call or refuge or to reach or enter or attempt to reach or enter the port or place of destination of the Tow and there deliver the Tow and leave again, all of which safely and without unreasonable delay, the Tug may leave the Tow or any part thereof at the place of departure or any other port or place where the Hirer may take repossession and this shall be deemed a due fulfilment by the Tugowner of this Agreement and any outstanding sums and all extra costs of delivery at such place and any storage costs incurred by the Tugowner shall thereupon become due and payable by the Hirer. 383-399

(b) If the performance of this Agreement or the voyage or the place of departure would in the ordinary course of events require the Tug and/or Tow to pass through or near to an area where after this Agreement is made there is or there appears to be danger of such area being blocked or passage through being restricted or made hazardous by reason of War, Acts of Terrorism, Trapping of Vessels, Civil War, Acts of Public Enemies, Arrest or Restraint of Princes, Rulers or People, Insurrection, Riots or Civil Commotions or Disturbances or other dangers of a similar nature then: 400-407

(i) If the Tug has not entered such area en route to the place of departure, or having entered has become trapped therein, for a period of more than 14 days either party hereto shall be entitled to terminate this Agreement by telex, cable or other written notice in which event, save for liabilities already accrued neither party shall be under any further liability to the other but the Tugowner shall not be bound to repay to the Hirer any payments already made and all amounts due shall remain payable. 408-415

(ii) If the Tug and Tow whilst en route to the place of destination have not entered such area during the course of the towage or other service the Hirer shall continue to pay the Daily Rate of Hire for every day by which the towage is prolonged by reason of waiting for such area to become clear and/or safe and/or by reason of proceeding by a longer route to avoid or pass such area in safety. 416-421

(iii) If the Tug and Tow whilst en route to the place of destination have become trapped in such area during the course of the towage or other service either party shall, after a period of 14 days from the commencement of such trapping, be entitled to terminate this Agreement by telex, cable or other written notice, in which event, save for liabilities already accrued, neither party shall be under any further liability to the other but the Tugowner shall not be bound to repay to the Hirer any payment already made and all amounts due shall remain payable. 422-429

21. Lien
Without prejudice to any other rights which he may have, whether in rem or in personam, the Tugowner, by himself or his servants or agents or otherwise shall be entitled to exercise a possessory lien upon the Tow in respect of any sum howsoever or whatsoever due to the Tugowner under this Agreement and shall for the purpose of exercising such possessory lien be entitled to take and/or keep possession of the Tow provided always that the Hirer shall pay to the Tugowner all reasonable costs and expenses howsoever or whatsoever incurred by or on behalf of the Tugowner in exercising or attempting or preparing to exercise such lien and the Tugowner shall be entitled to receive from the Hirer the Tug's Daily Rate of Hire throughout any reasonable delay to the Tug resulting therefrom. 430-441

22. Warranty of Authority
If at the time of making this Agreement or providing any service under this Agreement other than towing at the request, express or implied, of the Hirer, the Hirer is not the Owner of the Tow referred to in Box 4, the Hirer expressly represents that he is authorised to make and does make this Agreement for and on behalf of the Owner of the said Tow subject to each and all of these conditions and agrees that both the Hirer and the Owner of the Tow are bound jointly and severally by these conditions. 442-449

23. General
(a) If any one or more of the terms, conditions or provisions in this Agreement or any part thereof shall be held to be invalid, void or of no effect for any reason whatsoever, the same shall not affect the validity of the remaining 450-453

This document is a computer generated TOWHIRE form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

**PART II**
**"Towhire" International Ocean Towage Agreement (Daily Hire)**

ing terms, conditions or provisions which shall remain and subsist in full force and effect. 454 455

(b) For the purpose of this Agreement unless the context otherwise requires the singular shall include the plural and vice versa. 456 457

(c) Any extension of time granted by the Tugowner to the Hirer or any indulgence shown relating to the time limits set out in this Agreement shall not be a waiver of the Tugowner's right under this Agreement to act upon the Hirer's failure to comply with the time limits. 458 459 460 461

24. **Time for Suit** 462

Save for the indemnity provisions under Clause 18 of this Agreement, any claim which may arise out of or in connection with this Agreement or of any towage or other service to be performed hereunder shall be notified by telex, cable or otherwise in writing within 6 months of delivery of the Tow or of the termination of the towage or other service for any reason whatever, and any suit shall be brought within one year of the time when the cause of action first arose. If either of these conditions is not complied with the claim 463 464 465 466 467 468 469

and all rights whatsoever and howsoever shall be absolutely barred and extinguished. 470 471

25. **Law and Jurisdiction** 472

This Agreement shall be construed in accordance with and governed by English law. Any dispute or difference which may arise out of or in connection with this Agreement or the services to be performed hereunder shall be ~~referred to the High Court of Justice in London,~~submitted to and settled by **Arbitration held in London to that the Rules & Practice of London Maritime Arbitrator's Association, including the Rules for small claims shall be adopted & apply.** 473 474 475 476 477

No suit shall be brought in any other state or jurisdiction except that either party shall have the option to bring proceedings in rem to obtain conservative seizure or other similar remedy against any vessel or property owned by the other party in any state or jurisdiction where such vessel or property may be found. 478 479 480 481

WORKING COPY

WORKING COPY

This document is a computer generated TOWHIRE form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

# EXHIBIT 5

**Exhibit** .

**From:** "Sunscot" <Sunscot@sunscot.com>
**Date:** 4 August 2009 18:27:04 GMT+08:00
**To:** "Asian Marine - Steve J. Hulme " <asus487@seed.net.tw>
**Subject: MV LONG BIEN**

Steve / Keith
I have been pushing the Owners all day to confirm the hire of the "SALVAGE DUKE "
and they kept
on saying that there were just waiting for their insurance to confirm the same.
I regret to advise that they have now just sent me the following for which I can only
apologise :-

# QUOTE

**From:** Anh
**Sent:** 04 August 2009 18:11
**To:** Sunscot
**Subject:** MV LONG BIEN
Dear Keith,
Plsd to adv you that our crew member are successful to overcome vsls ME trouble.

As you know the vsls has 6 cylinder and one of piston was damaged.

They sealed that cylinder and steaming with remaining 5 cylinder to Danang to repair.
The vsls has just departed thus hiring salvage shud be temporary canceled.
Thank you very much for your best asistant and express our deep gratitude to you.
With best regards, Anh

# UNQUOTE

I can only apologise for this poor outcome – but I was pushing them all day for
confirmation
of the tug hire.
Kind regards
Keith Martin
Sunscot and Company Limited
Phone   (852)  2865-1889
Fax       (852)  2861-0298

Mobile  (852)  9467-0364
e-mail   sunscot@sunscot.com
HTTP    www.sunscot.com

# EXHIBIT 6

# BREAKDOWN OF CLAIM

Cancellation Fees – 5 days hire@ $20,000.00 per day:          $100,000.00

Charges of Mobilization:          $25,000.00

Hire – 5 days @ $20,000.00 per day:          $100,000.00

TOTAL:          $225,000.00

# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ASIAN MARINE SALVAGE LTD.,                    :        09 CV _____

             Plaintiff,                     :        ECF CASE

    - against -                                :

NORTHERN SHIPPING JOINT STOCK          :
COMPANY,                                                  :

           Defendant.                    :

------------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut  )
              )    ss:  Southport
County of Fairfield   )

      Coleen A. McEvoy, being duly sworn, deposes and says:

      1.     I am a member of the Bar of this Court and represent the Plaintiff herein.  I am familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

## DEFENDANT IS NOT PRESENT IN THE SOUTHERN DISTRICT OF NEW YORK

      2.     I have attempted to locate the Defendant NORTHERN SHIPPING JOINT STOCK COMPANY within the Southern District of New York (hereinafter "SDNY").  As part of my investigation to locate the Defendant within the SDNY, I checked the telephone company information directory, as well as the white and yellow pages for New York listed on the Internet or World Wide Web, and did not find any listing for the Defendant.  Finally, I checked the New York State Department of Corporations' online database which showed no listings or registration for the Defendant.

3.    I submit based on the foregoing that the Defendant cannot be found within the SDNY within the meaning of Rule B of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("Rule B").

## DEFENDANT'S PROPERTY MAY BE FOUND IN THE SDNY

4.    Upon information and belief, and also based upon payments made by the Plaintiff to the Defendant under the involved contracts which were sent by way of electronic funds transfers routed through New York intermediary banks, the Defendant has, or will have during the pendency of this action, tangible and intangible property as the same is defined under Rule B within the SDNY and subject to the jurisdiction of this Court, held in the hands of garnishees within the SDNY, which are believed to be due and owing to the Defendant.

5.    Upon information and belief, in the case of payments made by foreign parties, the vast majority of electronic funds transfers in U.S. dollars pass through banking/financial intermediaries located within the SDNY.

6.    Upon information and belief, Defendant has ongoing contractual obligations, or has had such obligations, that require it to make send / receive payments in U.S. dollars. Thus, the likelihood that the Defendant will send / receive future payments through one of the banks named in Schedule "A" to the proposed ORDER DIRECTING CLERK TO ISSUE PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT AND APPOINTING PROCESS SERVER is high and satisfies the reasonable belief threshold. The garnishee banks listed are limited to ones who regularly act as "intermediary banks" to effect wire transfers in U.S. dollars between a foreign originating bank and a foreign beneficiary bank.

2

## PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

7.      Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil

Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy,

Nancy R. Peterson, Coleen A. McEvoy, Anne C. LeVasseur, Darin L. Callahan or any other

partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server

employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex

Parte Order and Process of Maritime Attachment and Garnishment, together with any

interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon

information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account

of, the Defendant.

8.      Plaintiff seeks to serve the prayed for Process of Maritime Attachment and

Garnishment with all deliberate speed so that it may be fully protected against the potential of

being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the

Defendant.

9.      To the extent that this application for an Order appointing a special process server

with respect to this attachment and garnishment does not involve a restraint of physical property,

it is submitted that there is no sound reason to require that the service be effected by the Marshal

as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the

various garnishees to be identified in the writ and the required use of a Marshal will cause delay,

additional expense and provide no benefit in respect of the purpose for which Plaintiff has filed

this action.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

10.    Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendants, within the SDNY. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

11.    Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the proposed Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served and throughout the next day, provided that process is served the next day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

12.    Several garnishee banks, including, but not limited to, J.P. Morgan Chase, BNP Paribas, Societe Generale, have refused to consent to deem service of Rule B Orders and Writs continuous which will necessitate parties to serve these garnishees numerous times throughout any given day.  In seeking an Ex Parte Order deeming service continuous the Plaintiff relies on the holding on *DNSD Subsea AS v. Oceanografia, S.A. de CV*, 569 F. Supp. 2d 339, 347 (S.D.N.Y. 2008) which, in upholding the propriety of an Ex Parte Order which deemed service continuous, stated as follows:

> Clearly, the goal of the continuous service provision contained in the order signed by Judge Karas in this case and by Judge Scheindlin in *Ulisses* was *not* to undermine the Second Circuit's prohibition on the attachment of after-acquired

4

property announced in *Reibor*.    Rather, the continuous service provision 'was intended to avoid the absurdity, security problems, and inconvenience of requiring the garnishee banks to accept service repeatedly throughout the day.'  *Ulisses, 415 F. Supp. 2d at 328*.  Indeed, the absence of such a continuous service provision – either by court order or by consent from the garnishees – would inevitably result in the posting of lawyers and/or process servers at bank offices around the clock in an attempt to capture EFTs at the precise moment of their arrival.  Defendant's narrow reading of *Reibor*, would, in effect, overrule the Second Circuit's later holding in *Winter Storm* – something the Second Circuit expressly declined to do in *Aqua Stoli* -- by making it virtually impossible to attach EFTs in Rule B cases.

13.    The Courts within the Southern District of New York have an interest in preserving the efficacy of the Ex Parte Orders issued therein.  As a result, and in order to give effect to the Rule B relief requested herein, the Plaintiff request that the Court issue an Ex Parte Order deeming service continuous.

Dated: September 30, 2009

_____
Coleen A. McEvoy

Sworn and subscribed to before me
this 30th day of September, 2009

_____
Notary Public/Commissioner of the Superior Court

Mary E. Fedorchak
Notary Public-Connecticut
My Commission Expires
November 30, 2011

5